1  Wayne William Suojanen (Cal Bar 193627)
   billsuojanen@gmail.com
2  **SUOJANEN LAW OFFICE**
3  26895 Aliso Creek Road
   Suite B440
4  Aliso Viejo, California 92656
   Telephone: 949-305-1498
5
6  *(Counsel for Plaintiffs)*
7
   Pamela Borgess (0072789)
8  pamela@toledolaw.com
9  **ZOLL, KRANZ & BORGESS, LLC**
   6620 West Central Avenue, Suite 100
10 Toledo, Ohio 43617
   Telephone:  (419)841-9623
11 Facsimile:  (419)841-9719
12
13 *(Co-Counsel for Plaintiffs- Subject To*
   *Pro HacVice Admission)*
14

**UNITED STATES DISTRICT COURT**
15
**CENTRAL DISTRICT OF CALIFORNIA**
16

17 CAROLINA DEFACIO,                )   Case No.: __ **EDCV13 - 00401 JGB (OPx)** __
   MARTIN FACIO,                    )
18 NORMA SHECKGOST,                 )
   CAROLINA RIVERA,                 )
19 SYLVIA FACIO, and                )
   VERONICA STOCKER                 )   **COMPLAINT**
20 Individually and as the Heirs of )
21 JESSE FACIO, Deceased,           )
                                    )
22                                  )   **DEMAND FOR JURY TRIAL**
   Plaintiffs,                      )
23                                  )
                                    )
24 v.                               )
                                    )
25                                  )
   FRESENIUS MEDICAL CARE           )
26 HOLDING, INC.; FRESENIUS         )
   MEDICAL CARE HOLDING, INC.       )
27                          COMPLAINT
28                               1

1   MEDICAL CARE HOLDING, INC.            )
2   d/b/a FRESENIUS MEDICAL CARE          )
    NORTH AMERICA; FRESENIUS              )
3   USA, INC.; FRESENIUS USA              )
    MANUFACTURING, INC.;                  )
4   FRESENIUS USA                         )
5   MARKETING, INC.; FRESENIUS            )
    USA SALES, INC.; FRESENIUS            )
6   MEDICAL CARE AG & CO. KGAA;           )
7   FRESENIUS MEDICAL CARE                )
    MANAGEMENT, AG;                       )
8   FRESENIUS SE & CO. KGAA;              )
9   and FRESENIUS                         )
    MANAGEMENT, AG.,                      )
10

11  Defendants.

12          Plaintiffs, by and through the undersigned counsel, file this complaint and

13  assert as follows:

14

15                          <u>**NATURE OF THE ACTION**</u>

16          1.      This is a product liability action for injuries and damages caused by

17  GranuFlo dry acid concentrate (hereinafter "GranuFlo") and/or NaturaLyte liquid

18
    acid concentrate (hereinafter "NaturaLyte") used during dialysis treatment
19
    administered to Decedent.
20

21          2.      Defendants, Fresenius Medical Care Holding, Inc., Fresenius Medical

22  Care Holding, Inc. d/b/a Fresenius Medical Care North America, Fresenius USA,

23
    Inc., Fresenius USA Manufacturing, Inc., Fresenius USA Marketing, Inc.,
24
    Fresenius USA Sales, Inc., Fresenius Medical Care AG & Co. KGAA, Fresenius
25

26  Medical Care Management, AG, Fresenius SE & Co. KGAA, and Fresenius

27                                  COMPLAINT
28                                       2

Management, AG (hereinafter referred to as "Fresenius,""Fresenius Defendants" and/or "Defendants"), designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed NaturaLyte and/or GranuFlo for use as acid concentrates during hemodialysis.

3.     When warning of the safety, risks and/or defects of NaturaLyte and/or GranuFlo, Defendants concealed their knowledge of NaturaLyte's and/or GranuFlo's safety, risks and/or defects from Plaintiffs, Decedent, the United States Food and Drug Administration (hereinafter referred to as the "FDA"), the public in general and/or the medical community, specifically that NaturaLyte and/or GranuFlo could cause serious and grave health consequences, including, but not limited to, death, cardiopulmonary arrest, hypokalemia, hypoxemia, hypercapnia, cardiac arrhythmias, stroke and/or hypotension.

4.     Defendants negligently and/or fraudulently represented to the medical and healthcare community, the FDA, Plaintiffs, Decedent,and the public in general that NaturaLyte and/or GranuFlo had been tested and were found to be safe and/or effective for their indicated use – as acid concentrates to be administered during hemodialysis.

5.     When warning of the safety, risks and/or defects of NaturaLyte and/or GranuFlo, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the FDA, Plaintiffs, Decedent, and the public in general

COMPLAINT
3

that NaturaLyte and/or GranuFlo had been tested and were found to be safe and/or effective for their indicated use – as acid concentrates to be administered during hemodialysis.

6.      These representations and concealments were made by Defendants with the intent of defrauding and/or deceiving Plaintiffs, Decedent, the public in general and the medical and healthcare community, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, prescribe, administer and/or otherwise use NaturaLyte and/or GranuFlo as acid concentrates during hemodialysis, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of Decedent.

7.      Defendants negligently and improperly failed to perform sufficient tests, if any, concerning NaturaLyte's and/or GranuFlo's potential to cause serious and grave health consequences, including but not limited to death, cardiopulmonary arrest, hypokalemia, hypoxemia, hypercapnia, cardiac arrhythmias and/or hypotension, during clinical trials.

8.      As a result of the negligent, intentional, wanton and/or otherwise culpable acts of the Defendants alleged herein, Decedent suffered severe and permanent personal injuries.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

10.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

11.    Assignment is proper to the Eastern Division of this District under Local Rule 3-2(c), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in San Bernardino County, California.

## PARTY PLAINTIFFS

12.    Plaintiff Carolina Defacio, at all times material hereto, was an adult citizen and resident of San Bernardino County, California.   Plaintiff is the surviving spouse of Decedent, Jesse DeFacio, who also resided in San Bernardino County, California.

13.    Plaintiff Martin Facio is the son of Decedent.

14.    Plaintiff Norma Sheckgost is the daughter of Decedent.

15.    Plaintiff Carolina Rivera is the daughter of Decedent.

16.    Plaintiff Sylvia DeFacio is the daughter of Decedent.

17.     Plaintiff Veronica Stocker is the daughter of Decedent.

18.     Decedent suffered personal injuries, damages and death as a result of using NaturaLyte and/or GranuFlo during hemodialysis at his dialysis center located in San Bernardino County, California, including, but not limited to, the following: a severe adverse cardiovascular event on approximately March 26, 2011 and cardiovascular death on or about April 6, 2011.

19.     Due to the negligent, intentional, willful, wanton, fraudulent, and/or otherwise culpable conduct of Defendants alleged herein, Plaintiffs, Decedent, Decedent's treating physicians and/or healthcare providers did not discover, nor did they have reason to discover, the serious and severe health risks associated with using NaturaLyte and/or GranuFlo and the resulting injury, until after the products were recalled by the FDA in June, 2012.

## PARTY DEFENDANTS

20.     Defendant Fresenius Medical Care Holding, Inc.is a corporation organized under the laws of the State of New York having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451.

21.     Defendant Fresenius Medical Care Holding, Inc.at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

22.     Defendant Fresenius Medical Care Holding, Inc. has transacted and conducted business throughout the United States, including this judicial district.

23.     Defendant Fresenius Medical Care Holding, Inc.has derived substantial revenue from goods and products designed, manufactured, marketed, advertised, promoted, sold, and/or distributed throughout the United States, including this judicial district.

24.     Defendant Fresenius Medical Care Holding, Inc.derives substantial revenue from interstate commerce throughout the United States, including this judicial district.

25.     Defendant Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North Americais a corporation organized under the laws of the State of New York having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451.

26.     Defendant Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North America at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

27.     Defendant Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North America has transacted and conducted business throughout the United States, including this judicial district.

28.     Defendant Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North America has derived substantial revenue from goods and products designed, manufactured, marketed, advertised, promoted, sold, and/or distributed throughout the United States, including this judicial district.

29.     Defendant Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North America derives substantial revenue from interstate commerce conducted throughout the United States, including this judicial district and expected or should have expected to be held accountable in this judicial district.

30.     Defendant Fresenius USA, Inc.is a corporation organized under the laws of the State of Massachusetts having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451.

31.     Defendant Fresenius USA, Inc. at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

32.     Defendant Fresenius USA, Inc. has transacted and conducted business throughout the United States, including this judicial district.

33.     Defendant Fresenius USA, Inc. has derived substantial revenue from goods and products designed, manufactured, marketed, advertised, promoted, sold and/or distributed throughout the United States, including this judicial district.

34.     Defendant Fresenius USA, Inc. derives substantial revenue from interstate commerce conducted throughout the United States, including this judicial district and expected or should have expected to be held accountable in this judicial district.

35.     Defendant Fresenius USA Manufacturing, Inc. is a corporation organized under the laws of the State of Delaware having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451.

36.     Defendant Fresenius USA Manufacturing, Inc. at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

37.     Defendant Fresenius USA Manufacturing, Inc. has transacted and conducted business throughout the United States, including this judicial district.

38.     Defendant Fresenius USA Manufacturing, Inc. has derived substantial revenue from goods and products designed, manufactured, marketed, advertised, promoted, sold, and/or distributed throughout the United States, including this judicial district.

39.     Defendant Fresenius USA Manufacturing, Inc. has derived substantial revenue from goods and products designed, manufactured, marketed, advertised, promoted, sold, and/or distributed throughout the United States, including this judicial district; and, expected or should have expected its acts to have consequences within this judicial district.

40.     Defendant Fresenius USA Marketing, Inc. is a corporation organized under the laws of the State of Delaware having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451.

41.     Defendant Fresenius USA Marketing, Inc.at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

42.     Defendant Fresenius USA Marketing, Inc. has transacted and conducted business throughout the United States, including this judicial district.

43.     Defendant Fresenius USA Marketing, Inc. has derived substantial revenue from goods and products used throughout the United States, including this judicial district.

44.     Defendant Fresenius USA Marketing, Inc.expected or should have expected its acts to have consequences within this judicial district; and derives

substantial revenue from interstate commerce transacted throughout the United States, including this judicial district.

45.   Defendant Fresenius USA Sales, Inc. is a corporation organized under the laws of the State of Massachusetts having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451.

46.   Defendant Fresenius USA Sales, Inc.at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

47.   Defendant Fresenius USA Sales, Inc.has transacted and conducted business throughout the United States, including this judicial district.

48.   Defendant Fresenius USA Sales, Inc.has derived substantial revenue from goods and products used throughout the United States, including this judicial district.

49.   Defendant Fresenius USA Sales, Inc.expected or should have expected its acts to have consequences within this judicial district; and, derives substantial revenue from interstate commerce transacted throughout the United States, including this judicial district.

50.   Upon information and belief, Defendants Fresenius USA, Inc., Fresenius USA Manufacturing, Inc., Fresenius USA Marketing, Inc.andFresenius

USA Sales, Inc. are wholly owned subsidiaries of Defendants Fresenius Medical Care Holding, Inc. and/or Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North America.

51.    Defendant Fresenius Medical Care AG & Co. KGAA is a partnership limited by shares organized under the laws of Germany having its headquarters and principal place of business at 61352 Bad Homburg, Germany with a postal address of 61346 Bad Homburg, Germany.

52.    Defendant Fresenius Medical Care AG & Co. KGAA, a partnership limited by shares, was formerly known as Fresenius Medical Care AG, a stock corporation.   Fresenius Medical Care AG &Co. KGAA is the same legal business entity as Fresenius Medical Care AG.

53.    Defendant Fresenius Medical Care AG & Co. KGAA is and was at all relevant times the parent company of Defendants Fresenius Medical Care Holding, Inc. and/or Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North America.

54.    Defendant Fresenius Medical Care AG & Co. KGAA at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

55.     Defendant Fresenius Medical Care AG & Co. KGAA has transacted and conducted business throughout the United States, including this judicial district.

56.     Defendant Fresenius Medical Care AG & Co. KGAA has derived substantial revenue from goods and products used throughout the United States, including this judicial district.

57.     Defendant Fresenius Medical Care AG & Co. KGAA expected or should have expected its acts to have consequences within this judicial district; and, derives substantial revenue from interstate commerce transacted throughout the United States, including this judicial district.

58.     Defendant Fresenius Medical Care Management AG is a corporation organized under the laws of Germany having its headquarters and principal place of business at 61352 Bad Homburg, Germany with a postal address of 61346 Bad Homburg, Germany.

59.     Defendant Fresenius Medical Care Management AG is the general partner of Defendant Fresenius Medical Care AG & Co. KGAA, and is responsible for the management of Defendant Fresenius Medical Care AG & Co. KGAA.

60.     Defendant Fresenius Medical Care Management AG was the majority voting shareholder of Fresenius Medical Care AG & Co. KGAA, when it was known as Fresenius Medical Care AG, and was responsible for the management of

COMPLAINT

Defendant Fresenius Medical Care AG & Co. KGAA, when it was known as Fresenius Medical Care AG.

61.    Defendant Fresenius Medical Care Management AG at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

62.    Defendant Fresenius Medical Care Management AG has transacted and conducted business throughout the United States, including this judicial district.

63.    Defendant Fresenius Medical Care Management AG has derived substantial revenue from goods and products used throughout the United States, including this judicial district.

64.    Defendant Fresenius Medical Care Management AG expected or should have expected its acts to have consequences within this judicial district; and derives substantial revenue from interstate commerce transacted throughout the United States, including this judicial district.

65.    Defendant Fresenius Medical Care Management AG is and was at all times relevant herein a wholly owned subsidiary of Defendant Fresenius SE & Co. KGAA.

66.     Defendant Fresenius SE & Co. KGAA is a partnership limited by shares organized under the laws of Germany having its headquarters and principal place of business at 61352 Bad Homburg, Germany with a postal address of 61346 Bad Homburg, Germany.

67.     Defendant Fresenius SE & Co. KGAA was formerly known as Fresenius SE, which was formerly known as Fresenius AG.   Fresenius SE & Co. KGAA is the same legal business entity as Fresenius SE and Fresenius AG.

68.     Defendant Fresenius SE & Co. KGAA at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing NaturaLyte and/or GranuFlo throughout the United States, including this judicial district.

69.     Defendant Fresenius SE & Co. KGAA has transacted and conducted business throughout the United States, including this judicial district.

70.     Defendant Fresenius SE & Co. KGAA has derived substantial revenue from goods and products used throughout the United States, including this judicial district.

71.     Defendant Fresenius SE & Co. KGAA expected or should have expected its acts to have consequences within this judicial district; and derives substantial revenue from interstate commerce transacted throughout the United States, including this judicial district.

72.     Defendant Fresenius Management SE is a corporation organized under the laws of Germany having its headquarters and principal place of business at 61352 Bad Homburg, Germany with a postal address of 61346 Bad Homburg, Germany.

73.     Defendant Fresenius Management SE is the general partner of Fresenius SE & Co. KGAA, and is responsible for the management of Defendant FreseniusSE & Co. KGAA.

74.     Defendant Fresenius Management SE was the majority voting shareholder of Fresenius SE & Co. KGAA, when it was known as Fresenius SE, and was responsible for the management of Defendant Fresenius SE & Co. KGAA, when it was known as Fresenius SE.

75.     Defendant Fresenius Management SE was the majority voting shareholder of Fresenius SE & Co KGAA, when it was known as Fresenius AG, and was responsible for the management of Defendant Fresenius SE & Co. KGAA, when it was known as Fresenius AG.

76.     Defendant Fresenius Management SE at all times relevant herein was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and/or distributing NaturaLyte and/or GranuFlo in the stream of commerce for use by the public, including the Decedent.

77.     Defendant Fresenius Management SE has transacted and conducted business throughout the United States, including this judicial district.

78.     Defendant Fresenius Management SE has derived substantial revenue from goods and products used throughout the United States, including this judicial district.

79.     Defendant Fresenius Management SE expected or should have expected its acts to have consequences within this judicial district; and derives substantial revenue from interstate commerce transacted throughout the United States, including this judicial district.

## JOINT & SEVERAL LIABILITY

80.     Hereinafter the aforementioned Defendants may collectively be referred to as "Defendants" or "Fresenius."

81.     The combined acts and/or omissions of each Defendant resulted in injury to Plaintiffs and Decedent.  Each of the above-named Defendants is a joint tortfeasor and is jointly and severally liable to Plaintiffs for the negligent acts and omissions alleged herein.

82.     Upon information and belief, each Defendant is a wholly-owned subsidiary of Fresenius Medical Care AG & Co. KGAA.

83.     At all relevant times each Defendant acted in all aspects as agent and alter ego of for each named Defendant.

84.    At all relevant times each Defendant acted in all aspects as agent and alter ego of Fresenius Medical Care AG & Co. KGAA.

85.    At all relevant times, Defendants were engaged in the business of designing, testing, manufacturing, marketing, promoting, selling, labeling, packaging, and/or distributing NaturaLyte and/or GranuFlo in this judicial district and throughout the United States.

86.    At all relevant times, Defendants intentionally, recklessly and/or negligently designed, manufactured, marketed, advertised, promoted, labeled, sold and/or distributed NaturaLyte and/or GranuFlo as being safe for use in dialysis when, in fact, the Defendants had reason to know, and/or did know, that the products were not safe and associated with an increased risk of serious injury and death.

87.    At all times material hereto, Defendants maintained systematic and continuous contacts in this judicial district, regularly transacted business within this judicial district, and regularly availed itself of the benefits of this judicial district.

88.    At all relevant times, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of NaturaLyte and/or GranuFlo.

89.     Defendants are present and doing business in this state.  Defendants are and were at all relevant times authorized to conduct business within this judicial district.

90.     At all relevant times, Defendants intentionally, recklessly and/or negligently designed, manufactured, marketed, advertised, promoted, labeled, sold and/or distributed NaturaLyte and/or GranuFlo in this judicial district which caused and/or substantially contributed to causing the injuries and damages alleged herein.

91.     Defendants received substantial financial benefit and profits as a result of designing, manufacturing, marketing, advertising, promoting, labeling, selling and/or distributing NaturaLyte and/or GranuFlo in this judicial district and throughout the United States.

## FACTUAL BACKGROUND

### A. Hemodialysis in General

92.     Hemodialysis is a method of treating acute and chronic kidney disease.

93.     Hemodialysis is a treatment that attempts to replace the function of a normal kidney by filtering waste and removing extra fluids and electrolytes from the body.

94.     A person undergoing hemodialysis is connected to a hemodialysis machine and then blood is removed from the body.  A dialysate is utilized in the hemodialysis machine to remove the waste from the blood.  Once the waste is removed, the blood is returned to the body.

95.     Many patients who suffer from kidney disease also suffer from a condition known as metabolic acidosis (too much acid in the body) because the kidneys are failing to remove excess acid from the body.

96.     One goal of hemodialysis is to attempt to bring the body's acid levels into balance.  This can be done through the use of a base – a bicarbonate dialysate – where the bicarbonate acts as a pH buffer to neutralize the metabolic acidosis.

97.     Because kidney failure also affects the body's ability to produce electrolytes, such as calcium and magnesium, these same electrolytes are introduced into the blood during hemodialysis.  However, because the bicarbonates when combined with calcium and/or magnesium react to create an insoluble substance, an acid concentrate is added to the bicarbonate dialysate to prevent this from occurring.

98.     Defendants' NaturaLyte and GranuFlo are acid concentrates.

99.     When introduced into the body, the acid contained within acid concentrates is converted into bicarbonates by the liver, which increases bicarbonate levels in the blood.

100.   As a result, a person undergoing hemodialysis receives bicarbonates from two sources:  (1) the bicarbonate solution introduced during dialysis; and (2) the acid concentrate when it reaches the liver.

101.   If an individual undergoing dialysis is administered and/or receives an excess of bicarbonates from one and/or both sources, metabolic alkalosis can occur.

102.   Metabolic alkalosis is a medical condition in which there is too much bicarbonate or base in the blood.   It is the converse of metabolic acidosis.

103.   Metabolic alkalosis is a medical condition which, if left undiagnosed and/or untreated, can lead to serious adverse events, including but not limited to electrolyte imbalances, hypokalemia, hypercapnia, hypotension, hypoxemia, heart arrhythmias, heart attacks, coma, cardiac arrest, stroke and/or death.

104.   Given that a person undergoing hemodialysis receives bicarbonates from two sources (the bicarbonate solution and the acid concentrate), a prescribing physician and/or healthcare facility must ensure that the individual undergoing dialysis is receiving enough bicarbonates, from both sources, to address the individual's acid levels in the blood, but not excessive amounts of bicarbonates so as to cause metabolic alkalosis.

105.   As such, it is imperative that the manufacturer of a product used in hemodialysis, such as an acid concentrate, advise and/or warn prescribing

physicians and/or healthcare facilities of any and all risks, concerns, defects and other safety information regarding said product.

**B.    NaturaLyte and GranuFlo**

106.   NaturaLyte and/or GranuFlo are acid concentrates designed, manufactured, marketed, advertised, distributed, and sold by Defendants to be used with a bicarbonate concentrate to create a bicarbonate dialysate for hemodialysis.

107.   NaturaLyte contains 4.0 mEq/L of acetate.

108.   GranuFlo contains 8.0 mEq/L of acetate.

109.   NaturaLyte and/or GranuFlo are regulated as medical devices by the FDA.

110.   NaturaLyte and/or GranuFlo are registered trademarks of the Defendants.

111.   NaturaLyte and/or GranuFlo were submitted for approval by the FDA through the 510(k) process as opposed to the FDA's more rigorous premarket approval process.

112.   Upon information and belief, Defendants submitted their NaturaLyte and/or GranuFlo acid concentrates for approval pursuant to the 510(k) approval process as opposed to the FDA's more rigorous premarket approval process so that they could bypass the premarket approval process, which would have obligated

them to design and implement a clinical investigation regarding the products and to submit the results of that investigation to the FDA for review.

113.   Upon information and belief, on or about April 23, 1981, Defendants' NaturaLyte 9000 Series was approved for marketing, sale and use pursuant to the 510(k) approval process.

114.   Upon information and belief, on or about December 3, 1982, Defendants' NaturaLyte 4000 Series was approved for marketing, sale and use pursuant to the 510(k) approval process.

115.   Upon information and belief, on or about July 26, 1985, Defendants' NaturaLyte 6000 Series was approved for marketing, sale and use pursuant to the 510(k) approval process.

116.   Upon information and belief, on or about April 29, 1992, Defendants submitted a premarket notification of their intent to market GranuFlo in a granulated formula ("GranuFlo April 510(k) submission") in the United States to the FDA.

117.   Upon information and belief, Defendants' GranuFlo April 510(k) submission to the FDA included Defendants' unilateral finding that GranuFlo in a granulated formula was substantially equivalent to other products on the market.

118.   Upon information and belief, Defendants' GranuFlo that was the subject of their GranuFlo April 510(k) submission to the FDA did not contain diacetate.

119.   Upon information and belief, based upon information provided to them by Defendants, the FDA originally approved GranuFlo in a granulated formula for marketing, sale and use on or about 1994.

120.   Upon information and belief, in or about 2002, Defendants altered the formula of their GranuFlo by switching the acid used in said product to diacetate.

121.   Upon information and belief, Defendants' goal in using diacetate in their GranuFlo was to counter the negative effects of metabolic acidosis by increasing bicarbonate levels in the blood via an acid concentrate as opposed to and/or in addition to a bicarbonate solution.

122.   Upon information and belief, Defendants' goal in using diacetate in their GranuFlo was to improve pre-dialysis bicarbonate levels in the blood.

123.   In or about 2002, Defendants began administering their GranuFlo with diacetate to dialysis patients.

124.   Upon information and belief, in or about 2002, Defendants began administering their GranuFlo with diacetate to dialysis patients without FDA approval.

125.   On or about January 14, 2003, Defendants submitted a premarket notification of their intent to market GranuFlo in a non-granulated formula in the United States to the FDA ("GranuFlo January 510(k) submission").

126.   Defendants' GranuFlo that was subject to the January 510(k) submission contained diacetate.

127.   Within their GranuFlo January 510(k) submission, Defendants did not advise the FDA and/or concealed from the FDA that they had begun administering their GranuFlo with diacetate to dialysis patients in or about August 2002.

128.   Defendants' GranuFlo January 510(k) submission to the FDA included Defendants' unilateral finding that GranuFlo, in a non-granulated formula, was substantially equivalent to other products on the market, including their GranuFlo products (previously referred to as Granulyte) that were approved by the FDA on or about 1991and 1994.

129.   Within Defendants' GranuFlo's January 510(k) submission to the FDA, Defendants represented to the FDA that their GranuFlo, in a non-granulated formula, would be used as a direct product replacement for their previously approved GranuFlo.

130.   Within Defendants' GranuFlo's January 510(k) submission to the FDA, Defendants represented to the FDA that their GranuFlo, in a non-granulated

formula, had the same chemical composition as their previously approved GranuFlo.

131. Within Defendants' GranuFlo's January 510(k) submission to the FDA, Defendants failed to notify and/or inform the FDA that their GranuFlo, in a non-granulated formula, contained diacetate.

132. Within Defendants' GranuFlo's January 510(k) submission to the FDA, Defendants intentionally, willfully, recklessly and/or negligently hid, omitted and concealed from the FDA that their GranuFlo, in a non-granulated formula, contained diacetate.

133. Upon information and belief, Defendants intentionally drafted their January 510(k) submission in such a manner so as to mislead the FDA into believing that their GranuFlo, in a non-granulated formula, contained the same type of acetate as their previously approved GranuFlo so as to support a finding by the FDA that the products were substantially similar.

134. Upon information and belief, based upon information provided to them by Defendants, the FDA originally approved GranuFlo in a non-granulated formula for marketing, sale and use on or about May 20, 2003.

135. Upon information and belief, following its approval by the FDA, Defendants only manufactured, marketed, promoted, advertised, marketed, distributed and/or sold GranuFlo containing dialysate.

136.   Upon information and belief, following its approval by the FDA, Defendants only manufactured, marketed, promoted, advertised, marketed, distributed and/or sold GranuFlo containing 8 mEq/L, which is equivalent to 4mEq/L more acetate than any other acid concentrate on the market.

137.   Upon information and belief, following its approval by the FDA, the Defendants never communicated to all treating physicians and/or healthcare facilities administering and/or using GranuFlo that bicarbonate levels needed to be adjusted to take into account the additional acetate provided by GranuFlo.

**C.    Defendants' Knowledge**

138.   Since the 1990s the literature has revealed the risks of elevated bicarbonate levels and increased mortality risk including, but not limited to, the following:

a.   Lowrie EG, Lew NL: Death Risk in Hemodialysis Patients: the Predictive Value of Commonly Measured Variables and an Evaluation of Death Rate Differences between Facilities, *Am J Kidney Dis.*, 15:458-482 (1990);

b.   Williams AJ, Dittmer ID, McArley A, Clarke K., High Bicarbonate Dialysis in Haemodialysis Patients: Effects on Acidosis and Nutritional Status, *Nephrol Dial Transplant,* 12:2633-37 (1997);

c.   Grassmann A, Uhlenbusch-Korwer I, Bonnie-Schorn E, Vienken J, Composition and Management of Hemodialysis Fluids. *Good Dialysis Practice,* Vol. 2 at 60-99 (Pabst 2000);

d.   Karnik JA, Young BS, Lew NL, et al., Cardiac Arrest and Sudden Death in Dialysis Units, *Kidney Int.,* 60:350-57 (2001);

e. Bommer J, Locatelli F, Satayathum S, et al., Association of Predialysis Serum Bicarbonate Levels with Risk of Mortality and Hospitalization in the Dialysis Outcomes and Practice Patterns Study, *Am. J Kidney Dis.,* 22:661-71 (2004);

f. Wu DY, Shinaberger CS, Regidor DL, McAllister CJ, Kopple JD, Kalantar-zadeh K: Association between Serum Bicarbonate and Death in Hemodialysis Patients: Is It Better to be Acidotic or Alkalotic?, *Glin Am SocNephrol,* 1:70-78 (2006);

g. Bleyer AJ, Hartman J, Brannon PC, Reeves-Daniel A, Satko SG, Russell G., Characteristics of Sudden Death in Hemodialysis Patients, *Kidney Int,* 69:2268-73 (2006); and

h. Gennari FJ. Very Low and High Predialysis Serum Bicarbonate Levels are  Risk Factors for Morality: What are the Appropriate Interventions? *SeminDial.* May-Jun; 23(3): 253-257 (2010).

139.   By at least 2001, Defendants also recognized there was confusion and protocol issues regarding bicarbonate delivery during dialysis treatment and the labeling on bicarbonate and acid concentrate products. Defendants knew this meant physicians did not have adequate information to inform their medical decision making to assure patients received intended treatments.

140.   Defendants further realized that users of dialysis machines, nurses, technicians, and other staff, were inadequately trained and informed regarding the product and dialysis machine configurations, the interrelationship between bicarbonate concentrations, and in setting machine levels and features.

141.   By at least 2003, Defendants knew, or should have known:

a. That patients using their product were developing post-dialysis alkalosis;

b. That alkalosis is a significant independent and additive risk factor associated with cardiopulmonary arrest, and leads to other metabolic imbalances that contribute to cardiac arrest;

c. That the major cause of alkalosis in dialysis patients was inappropriately high dialysate total buffer concentration; and

d. That physicians needed warnings and adequate instructions to properly treat patients and prescribe the product, and staff needed adequate instructions regarding proper machine settings and proper review and monitoring of patients.

142.   A 2004 study published in the American Journal of Kidney Diseases titled, "Association of Predialysis Serum Bicarbonate Levels with Risk of Mortality and Hospitalization in the Dialysis Outcomes and practice Patterns Study" further informed Defendants of their product's dangers, it observed that patients with increased pre-dialysis metabolic alkalosis levels were more likely to experience a heart attack or sudden cardiac death absent lowering the bicarbonate prescription.

143.   In a patent application assigned to Defendants filed May 17, 2006, Defendants described an invention that admitted the "contribution of bicarbonate resulting from metabolism of acetate contained in an acid dialysate constituent." It included a diagram of machine settings for GranuFlo® use that clearly showed the extra contribution of bicarbonate to the overall buffer. Defendants therefore knew by this time that its product required special instructions to reduce the risk of dangerously high bicarbonate levels.

144.   Between 2001 and 2012, Defendants repeatedly learned of persistent confusion about the bicarbonate settings on dialysis machines and physicians' prescriptions for bicarbonate. In particular:

a.   Defendants knew that nephrologists, dialysis nurses and technicians, physicians, and patients were not properly educated, trained, or informed about the acetate levels in their dialysis concentrates and that their product significantly increased the total buffer;

b.   Defendants knew that dialysis machines displayed a bicarbonate value that did not reflect an accurate total buffer value and therefore, additional calculations and steps were necessary to achieve the proper level of bicarbonate;

e.   Defendants knew that because of their misleading product information and inadequate warnings and instructions, patients were receiving too much bicarbonate, which could cause alkalosis;

d.   Defendants knew that bicarbonate-induced alkalosis could cause a dialysis patient's blood pressure to plummet, which, independently or compounded with other metabolic disturbances, can lead to cardiac arrest and stroke; and

e.   Defendants knew that the major cause of alkalosis in dialysis patients was the aforementioned inappropriately high dialysate total buffer concentration.

145.   In or about 2004, Defendants conducted a retrospective study of dialysis patients who had converted from previously approved acid concentrates to GranuFlo containing diacetate between August 2002 and April 2003 (Defendants' 2004 Retrospective Study).

146.   Upon information and belief, the goal of Defendants' 2004 Retrospective Study was to determine the efficacy of acid concentrate containing

COMPLAINT

30

diacetate (i.e. GranuFlo) in resolving and/or reducing metabolic acidosis when compared with a standard acid concentrate.

147.   Upon information and belief, the goal of Defendants' 2004 Retrospective Study was to determine the efficacy of acid concentrate containing diacetate (i.e. GranuFlo) in improving pre-dialysis bicarbonate levels in the blood.

148.   In or about 2004, Defendants evaluated the results of their 2004 Retrospective Study which revealed, among other things, higher than normal pre and post-dialysis bicarbonate levels as a result of the administration of GranuFlo containing diacetate.

149.   In or about 2004, Defendants evaluated the results of their 2004 Retrospective Study which also revealed, among other things, a significant increase in cases of metabolic alkalosis as a result of the administration of GranuFlo containing diacetate.

150.   Defendants were on notice and/or should have been on notice of their obligation to report the results of their 2004 Retrospective Study to the FDA, the medical community, Plaintiffs, Decedent, Decedent's treating physicians and/or healthcare providers and the public.

151.   Upon information and belief, despite the results of their 2004 Retrospective Study and their knowledge of the severe health risks associated with their GranuFlo, Defendants intentionally and willfully concealed their knowledge

of these results and/or the increased severe health risks associated with their GranuFlo from the FDA, the medical community, Plaintiffs, Decedent, Decedent's treating physicians and/or healthcare providers and the public.

152.   As a result of the data that was or should have been known to Defendants as described herein, Defendants were on notice and/or should have been on notice that the administration of GranuFlo containing diacetate resulted in higher than normal pre and post-dialysis bicarbonate levels.

153.   As a result of the data that was or should have been known to Defendants as described herein, Defendants were on notice and/or should have been on notice that the administration of GranuFlo containing diacetate resulted in a significant increase in metabolic alkalosis.

154.   As a result of the data that was or should have been known to Defendants as described herein, Defendants were on notice and/or should have been on notice that additional testing was necessary regarding the safety of their GranuFlo.

155.   As a result of the data that was or should have been known to Defendants as described herein, Defendants were on notice and/or should have been on notice that dialysis patients may have been receiving too many bicarbonates during dialysis as a result of their receipt of GranuFlo.

156.   As a result of the data that was or should have been known to Defendants as described herein, Defendants were on notice and/or should have been on notice of the need to advise, instruct and/or warn all prescribing physicians and/or healthcare facilities that dialysis patients may be receiving too many bicarbonates during dialysis as a result of their receipt of GranuFlo.

157.   Upon information and belief, despite their knowledge of the severe health risks associated with GranuFlo, Defendants failed to:

a.   Adequately and timely inform the FDA, the medical community, Plaintiffs, Decedent, Decedent's treating physicians and/or healthcare providers and the public, regarding these results and/or risks.

b.   Advise and/or warn all doctors and/or other healthcare providers treating patients with GranuFlo to reduce the amount of bicarbonates being administered to and/or received by the patient during dialysis to take into account the additional bicarbonates that these individuals were receiving from GranuFlo.

c.   Advise and/or warn all doctors and/or other healthcare providers treating patients with GranuFlo to monitor more frequently the dialysis patient's pre and post-dialysis bicarbonate levels.

d.   Advise and/or warn doctors, the FDA, the medical community, Plaintiffs, Decedent, Decedent's treating physicians and healthcare providers and the public of the increased risk of suffering from metabolic alkalosis as a result of the administration of GranuFlo and/or,

e.   Conduct additional testing regarding the safety of their GranuFlo.

158.   On or about November 4, 2011, Fresenius Defendants sent an Internal Memo ("Fresenius' Internal Memo") to some of its clinics regarding the severe health risks associated with their NaturaLyte and/or GranuFlo.

159.   Within Fresenius' Internal Memo, Fresenius Defendants identified a case-control study they performed to evaluate risk factors in hemodialysis patients who had suffered from cardiopulmonary arrest compared to other hemodialysis patients between January 1, 2010, and December 31, 2010.

160.   Fresenius Defendants did not notify the FDA of the case-control study identified within Fresenius' Internal Memo.

161.   Upon information and belief, Fresenius Defendants conducted the case-control study identified within Fresenius' Internal Memo because of increased reports of cardiac events being associated with their GranuFlo.

162.   According to Fresenius' Internal Memo, the results of the case-control study identified within Fresenius' Internal Memo revealed that for the patients receiving Defendants' NaturaLyte and/or GranuFlo, there was a progressive shift towards higher pre-dialysis serum bicarbonate levels, implying that more patients were experiencing alkalosis prior to dialysis and an even higher percentage of patients were experiencing alkalosis post-dialysis.

163.   According to Fresenius' Internal Memo, the results of the case-control study revealed that borderline elevated pre-dialysis bicarbonate levels and overt

alkalosis were associated with six to eight fold greater risk of cardiopulmonary arrest and sudden cardiac death in the dialysis facility.

164.   According to Fresenius' Internal Memo, Fresenius Defendants stated "[i]n light of these troubling findings, we strongly recommend that physicians adjust dialysate bicarbonate prescriptions monthly for individual patients, with immediate attention to patients with serum pre-dialysis bicarbonate levels of >24 mEq/L."

165.   Fresenius' Internal Memo was only sent internally.

166.   Upon information and belief, Fresenius' Internal Memo was not sent to the medical facilities at which the Decedent was administered and/or received NaturaLyte and/or GranuFlo.

167.   Upon information and belief, Fresenius' Internal Memo was not sent to the Decedent's treating physicians who ordered and/or prescribed her dialysis treatments.

168.   Fresenius' Internal Memo references previous internal memos that were sent to medical directors and attending physicians employed by Fresenius Defendants regarding the severe health risks associated with NaturaLyte and/or GranuFlo, which, at all relevant times, remained in the custody, control and possession of Defendants.

169.   Upon information and belief, these previous internal memos were not sent to the medical facilities at which the Decedent was administered and/or received NaturaLyte and/or GranuFlo.

170.   Upon information and belief, these previous internal memos were not sent to the Decedent's treating physicians who ordered and/or prescribed Decedent's dialysis treatments.

171.   Fresenius' Internal Memo references a Medical Staff Newsletter dated January 2010 that was made available to medical directors and attending physicians employed by Fresenius Defendants and that discussed the severe health risks associated with NaturaLyte and/or GranuFlo, which, at all relevant times, remained in the custody, control and possession of Defendants.

172.   Upon information and belief, the Medical Staff Newsletter dated January 2010 was not sent to the medical facilities at which Decedent was administered and/or received NaturaLyte and/or GranuFlo.

173.   Upon information and belief, Medical Staff Newsletter dated January 2010 was not sent to Decedent's treating physicians who ordered and/or prescribed Decedent's dialysis treatments.

174.   After Fresenius Defendants learned and/or should have learned of the severe health risks associated with their NaturaLyte and/or GranuFlo, Defendants

intentionally and affirmatively elected not to report these risks to the FDA as required by law.

175.   After Fresenius Defendants learned and/or should have learned of the severe health risks associated with their NaturaLyte and/or GranuFlo, Defendants intentionally and affirmatively elected not to report these risks to the entire medical community, Plaintiffs, Decedent, Decedent's treating physicians and healthcare providers and the public at large.

176.   Upon information and belief, Defendants colluded to hide, conceal and obscure information about the severe health risks associated with their NaturaLyte and/or GranuFlo so that dialysis patients, such as Decedent, and Decedent's treating physicians and/or healthcare facilities would rely on and/or continue to use their NaturaLyte and/or GranuFlo in dialysis treatments.

177.   Upon information and belief, Defendants colluded to misrepresent information regarding the safety of their NaturaLyte and/or GranuFlo so that dialysis patients, such as Decedent, and Decedent's treating physicians and/or healthcare facilities would rely on and/or continue to use their NaturaLyte and/or GranuFlo in dialysis treatments.

178.   Upon information and belief, Defendants colluded to hide, conceal and obscure information about the severe health risks associated with their

NaturaLyte and/or GranuFlo in order to maintain their market share and to minimize and diffuse the legal risks for Fresenius.

179.   Upon information and belief, Defendants colluded to misrepresent information regarding the safety of their NaturaLyte and/or GranuFlo in order to maintain their market share and to minimize and diffuse the legal risks for Fresenius.

180.   Upon information and belief, rather than informing the FDA, the medical community, Plaintiffs, Decedent, Decedent's treating physicians and healthcare providers and the public at large of the severe health risks associated with their NaturaLyte and/or GranuFlo, Fresenius Defendants decided to manufacturer, market, promote, distribute and/or sell a new acid concentrate, Citrasate, to replace their NaturaLyte and/or GranuFlo.

181. Upon information and belief, Defendants intended to advertise, market and promote the benefits of their new acid concentrate, Citrasate, so that treating physicians and medical facilities would switch to Citrasate from NaturaLyte and/or GranuFlo and, thus, Defendants could justify a discontinuance of their NaturaLyte and/or GranuFlo for reasons other than product safety.

182.   In reliance upon Defendants' misrepresentations, omissions and/or concealments as set forth herein, Decedent, Decedent's treating physicians and/or healthcare facilities used NaturaLyte and/or GranuFlo.

183.   Had the severe health risks associated with Defendants' NaturaLyte and/or GranuFlo been properly and/or adequately disclosed, Decedent, Decedent's treating physicians and/or healthcare facilities would not have purchased and/or used NaturaLyte and/or GranuFlo.

184. In or about March 2012, Defendants' Internal Memo was anonymously submitted to the FDA.

185.   In or about March 2012, the FDA discovered Defendants' knowledge and unlawful concealment of the severe health risks associated with their NaturaLyte and/or GranuFlo.

186.   In or about March 2012, the FDA discovered that Defendants had violated federal law by failing to report their knowledge of the severe health risks associated with their NaturaLyte and/or GranuFlo.

187.   As a result of the FDA's discovery of Defendants' knowledge and unlawful concealment of the severe health risks associated with their NaturaLyte and/or GranuFlo, on or about March 27, 2012, Fresenius received an inquiry from the FDA regarding the severe health risks associated with their NaturaLyte and/or GranuFlo.

188. Following the FDA's inquiry, on or about March 29, 2012, Defendants sent a vague and ambiguous two page memorandum entitled "Urgent Product Notification Letter" to non-Fresenius dialysis clinics, hospitals and other

customers notifying them of the risk of metabolic alkalosis associated with their NaturaLyte and/or GranuFlo.

189.   Upon information and belief, after further investigation conducted by the FDA into the severe health risks associated with their NaturaLyte and/or GranuFlo, including Defendants' knowledge and unlawful concealment thereof, on June 28, 2012, the FDA issued a Class I recall of Defendants' NaturaLyte and/or GranuFlo.

190.   A Class I recall is a recall of dangerous or defective products that predictably could cause serious health problems or death.

191.   A Class I recall is the most serious recall that can be issued by the FDA.

192.   Plaintiffs,Decedent,   Decedent's   treating   physicians,   healthcare providers, and/or healthcare facilities did not discover, nor did they have reason to discover, the serious and severe health risks associated with Defendants' NaturaLyte and/or GranuFlo, until after the products were recalled by the FDA on June 28, 2012.

**D.   Fresenius Defendants**

193.   Fresenius Defendants are the world's largest integrated providers of products and services for individuals undergoing dialysis because of chronic kidney failure.

194.   As vertically integrated companies, Fresenius Defendants offer both dialysis clinics and products used in dialysis care, such as acid concentrates.

195.   Fresenius Defendants sell their products, including NaturaLyte and/or GranuFlo, not only to their own dialysis clinics, but also to their "competitors."

196.   Fresenius Defendants are, and at all relevant times were, responsible for ensuring, through adequate warnings, training, instructing and monitoring, that their NaturaLyte and/or GranuFlo were being properly used and/or administered by treating physicians, technicians and/or healthcare facilities.

197.   In 2011, Fresenius Defendants reported net revenue of $12,795 million related to their dialysis services and products, with $8,150 million in revenue attributed to North America (64%).

198.   In 2010, Fresenius Defendants reported net revenue of $12,053 million related to their dialysis services and products, with $8,130 million in revenue attributed to North America (67%).

199.   Fresenius Defendants have represented that they are committed to conducting their business activities in compliance with local laws and regulations, and that they seek to demonstrate professionalism, honesty and integrity in their business relationships with patients, customers, suppliers, the government, other payors, fellow employees, stockholders and the general public.

200. Despite Fresenius Defendants' representations, upon discovering the serious health consequences and risks associated with their NaturaLyte and/or GranuFlo, Defendants intentionally, willfully, recklessly and/or negligently failed to advise and/or warn dialysis patients, including the Decedent, their customers (i.e. treating physicians, healthcare facilities, distributors), their suppliers, the government, other payors and/or the general public of said serious consequences and risks.

201. Despite Fresenius Defendants' representations, upon discovering the serious health consequences and risks associated with their NaturaLyte and/or GranuFlo, Defendants permitted their NaturaLyte and/or GranuFlo to be assembled, compounded, manufactured, marketed, promoted, advertised, distributed, labeled, detailed, supplied, packaged and/or sold without adequate warnings of the serious health consequences and risks associated with their NaturaLyte and/or GranuFlo.

202. Despite Fresenius Defendants' representations, upon discovering the serious health consequences and risks associated with their NaturaLyte and/or GranuFlo, Defendants permitted their NaturaLyte and/or GranuFlo to be assembled, compounded, manufactured, marketed, promoted, advertised, distributed, labeled, detailed, supplied, packaged and/or sold without adequate instructions regarding the safe and proper use of their NaturaLyte and/or GranuFlo.

COMPLAINT
42

203.   Despite their knowledge of the serious health consequences and risks associated with their NaturaLyte and/or GranuFlo, Defendants engaged in a marketing campaign to promote the purchase and/or sales of their NaturaLyte and/or GranuFlo.

204.   Based upon the results of their 2004 Retrospective Study, at all relevant times, Defendants advertised and/or marketed that the use of their GranuFlo resulted in a 33% reduction in the prevalence of acidosis.

205.   Defendants advertised and/or marketed GranuFlo as less costly to transport to and/or store at healthcare facilities than other acid concentrates on the market.

206.   Defendants successfully marketed their NaturaLyte and/or GranuFlo throughout the United States by, among other things, conducting promotional campaigns that misrepresented the risks and benefits associated with their NaturaLyte and/or GranuFlo in order to induce widespread use and consumption.

207.   Defendants' misrepresentations regarding and/or promotions about their NaturaLyte and/or GranuFlo were made by means of media advertisement, internet advertisements, press releases, sales literature, presentations, advertising campaigns, print ads, magazine ads and/or additional commercial media.

208.   Upon information and belief, Fresenius Defendants did not disclose the serious health consequences and risks associated with their NaturaLyte and/or

GranuFlo because they knew that physicians and/or healthcare facilities would not purchase their NaturaLyte and/or GranuFlo, and, as a result, their sales would decline.

209.   Upon information and belief, as a result of Defendants' advertising and/or marketing campaign, GranuFlo experienced a steady increase in its market share since it was first approved in 2003 and, as of 2012, was used by the majority of hemodialysis patients in the United States.

210.   Defendants' wanton, willful, fraudulent and/or reckless conduct, as set forth herein, demonstrates a complete disregard and reckless indifference for the health, safety and welfare of consumers and dialysis patients, including the Decedent, thus entitling Plaintiffs to punitive damages so as to punish and deter such similar conduct in the future.

**E.    Injuries and Damages**

211.   Upon information and belief, the Decedent, Jesse Facio, was prescribed, administered and/or otherwise used NaturaLyte and/or GranuFlo pursuant to the prescribing physician's orders during dialysis in March, 2011.

212.   Decedent was administered or otherwise used NaturaLyte and/or GranuFlo as prescribed and in a reasonable and foreseeable manner.

213.   As a direct and proximate result of his use of NaturaLyte and/or GranuFlo, Decedent experienced a severe adverse cardiovascular event on approximately March 26, 2011 and cardiovascular death on or about April 6, 2011.

**F.   Tolling of the Limitations Period**

214.   Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs, Decedent and any non-defendant healthcare providers the true and significant risks associated with their products.

215.   As a result of Defendants' actions, neither Decedent, nor Decedent's healthcare providers were aware, nor could they have reasonably known or learned through reasonable diligence, that Decedent was being exposed to the risk identified herein, or that those risks were the result of the acts, omissions and misrepresentations of each Defendant.

216.   Accordingly, no cause of action or claim accrued, and no limitations period began to run, until such time as Plaintiffs knew or reasonably should have known of some causal connection between the use of Defendants' products and the harm suffered as a result, which was after the FDA's announcement of a Class 1 recall in June of 2012.

217.   Additionally, the accrual of a cause of action or claim and the running of any applicable statute of limitations has been tolled by Defendants' fraudulent concealment as described herein.

218.   Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described herein.

219.   Additionally, any limitations period is tolled by any other principle of equitable tolling available under applicable law.

## FIRST CAUSE OF ACTION
### (NEGLIGENCE & NEGLIGENCE *PER SE*)

220.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

221.   At all relevant times, Defendants knew or reasonably should have known that their product was unreasonably dangerous and defective when used as designed and directed. A reasonably careful search and review of the scientific literature and other information, and proper research and testing, indicated:

   a.   That health care professionals were unaware that Defendants' product contained acetic acid, acetate, or citrate that converts to bicarbonate;

   b.   That as a result, the potential existed for Defendants' product to contribute to metabolic alkalosis;

   c.   That metabolic alkalosis was associated with a higher risk of cardiac injury and death in hemodialysis patients; and

   d.   That health care professionals needed adequate warnings and instructions to consider the impact of Defendants' acid concentrate on the dialysate buffer and adjust prescription practices, dialysis machine settings, and related dialysis treatment practices.

222.   Defendants had a duty to exercise reasonable care and to comply with thethen-existing standard of care in the design, testing, research, development, packaging, distribution, promotion, marketing, advertising, instruction, and sale of their product.   Specifically:

a.   Defendants had a continuing duty to ensure that the product they provided was safe and used correctly through proper design, testing, research, adequate instruction, post-market surveillance, and appropriate modifications;

b.   Defendants had a duty to anticipate the environment in which the product would be used and to design against the reasonably foreseeable risks attendingthe product's use in that setting, including misuse or alteration;

c.   Defendants had a continuing duty to give an adequate warning of known or reasonably foreseeable dangers arising from the use of their product;

d.   Defendants had a duty to provide adequate warnings and instructions, which means they had to be comprehensible to the average user, calculated toconvey the material risks to the mind of a reasonably prudent person, and ofan intensity commensurate with the danger involved;

e.   Defendants had a continuing duty to assure the product they provided wasproperly labeled and true to the representations Defendants made about it;

f.   Defendants had a continuing duty to make sure their product had complete and accurate information and instructions concerning its proper use;

g.   Defendants had a continuing duty to assure that those writing and carrying out patients' prescriptions fully understood the nature, characteristics, and properuse of Defendants' product to allow them to

communicate and effectuate thepatients' medical needssafely, the proper dialysis machine settings, and safetreatment;

h. Defendants had a continuing duty to assure dialysis clinical staff wereproperly informed of and trained on proper use of Defendants' product andthat they complied with said training;

i. Defendants had a continuing duty to modify their products, and their packaging, instructions, promotional and advertising efforts to eliminate confusion and user error, assure compliance, and prevent harm; and

j. Defendants had a continuing obligation to disseminate appropriate contentand employ appropriate methods to convey accurate and complete product information.

223. In violation of the existing standards and duties of care, Defendants,individually and collectively, deviated from reasonable and safe practices in the following ways, by:

a. Designing a defective product in formulation and warnings/instructions;

b. Failing to conduct pre and post market safety tests and studies;

c. Failing to collect, analyze, and report available data regarding dialysis patients' use of Defendants' product;

d. Failing to conduct adequate post-market monitoring and surveillance;

e. Failing to include adequate warnings about and/or instructions concerning the increased risks of death and serious injury;

f. Failing to provide adequate warnings and/or proper instructions regarding proper uses of the product;

g. Failing to provide adequate warnings and/or proper instructions regarding monitoring dialysis patients before, during, and after dialysis;

h. Failing to inform users that Defendants had not adequately tested or researched the product to determine its safety and risks;

i. Failing to inform users that the clinicians, nurses, and/or physicians were not adequately trained, instructed, credentialed, and prepared for proper use of the product in a safe and effective manner;

j. Failing to educate and instruct users about the unique characteristics of their product and the proper way to administer it and operate the dialysis machines because of it;

k. Failing to properly instruct staff regarding machine calibration; product preparation (*e.g.,* specific gravity test); bicarbonate preparation; formula selection (*e.g.,* machine entry); base sodium and bicarbonate (*e.g.,* machine entry); and dialysate verification;

l. Failing to properly select, train, instruct, supervise, and monitor product users and their employees, agents, servants, officers, directors, and clinical staff;

m. Failing to implement and execute corrective and preventive actions to eliminate injuries resulting from foreseeable errors within clinics caused by the dozens of possible dialysate formulas Defendants provided;

n. Making material misrepresentations about the product's safety, nature, characteristics, and proper use; and

o. Continuing to promote and market the product despite the foregoing failures.

224. Defendants violated statutes, ordinances, and rules and/or regulations concerning the manufacturing, marketing and/or testing of their products.

225.  The injuries and damages alleged herein were the reasonably foreseeable result of Defendants' conduct.

226.  Had Defendants undertaken the tests, studies, and steps described herein, as required, the injuries and damages complained of here would not have occurred.

227.  Defendants are bound for the care of their agents, servants, employees, officers, and directors and for the neglect and fraud of the same.

228.  Defendants are liable for the conduct of their agents, servants, employees, officers, and directors committed in the course of their activities on behalf of and in furtherance of the company.  Defendants are their agents, employees, officers, and directors conduct attempting to advance Defendants' business. These persons acted within the scope of those efforts and their employment, as applicable. They were not exercising any independent business, but rather subject to Defendants' immediatedirection and control. Defendants retained the right to direct or control the time andmanner of executing the work, and interfered and assumed control with it.

229.  Defendants expressly and impliedly authorized and ratified the conduct oftheir agents, servants, employees, officers, and directors.

230.  Defendants received significant benefits as a direct result of their agents',employees', servants', officers', and directors' conduct.

231.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

232.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seekcompensatory damages, and exemplary and punitive damages together with interest, thecosts of suit and attorneys' fees and such other and further relief as this Court deems justand proper.

## SECOND CAUSE OF ACTION
### (STRICT PRODUCT LIABILITY - DESIGN DEFECT)

233.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

234.   Defendants were engaged in the business of designing, manufacturing, and selling the product at issue. Defendants placed it into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product.

235.   Defendants designed their product differently from preexisting products resulting in an unreasonably dangerous and defective product. According to Defendants, "bicarbonate-based dialysis products deliver additional buffering

COMPLAINT

capacity through mixing and metabolism of acetate, acetic acid or citric acid when mixed for dialysate;" however, only Defendants' product delivered excessive acetate and significantly and unprecedentedly increased the total buffer. The liver quickly converts acetate to bicarbonate in the liver. This contributes to metabolic alkalosis, which causesthe dialysis patients'blood pressure to plummet leading to cardiac arrest and stroke.  The cause of bicarbonate-induced alkalosis in dialysis patients was Defendants' inappropriately high dialysate total buffer concentration.

236.  Defendants' product was unreasonably and dangerously defective beyond the extent contemplated by ordinary users with ordinary knowledge regarding these products.   Decedent and Decedent's health care providers were unaware of the danger as Defendants provided ineffective and inadequate warnings and instructions, at best, and deliberately misled them.

237.  Defendants' product was defective due to inadequate post-marketing warnings and instructions, and/or inadequate testing and studies, and/or inadequate reporting regarding the results. Defendants' product was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risks, they failed to provide adequate information to the medical community and patients, but continued to promote the product as safe and effective.

238.   Defendants' product was defective in light of the dangers posed by its design and the likelihood of those avoidable dangers. Defendants' product was defective because the inherent risk of harm in Defendants' product design outweighed the utility or benefits of the existing product design. Defendants' product was defective because reasonably cost-effective and feasible state-of-the-art alternatives existed at the time that would not have undermined the product's usefulness. Defendants were aware of effective substitutes for the product, including their own alternative concentrates and dialysis machine enhancements. The gravity and likelihood of the dangers posed by the product's design outweighed the feasibility, cost, and adverse consequences to the product's function of a safer alternative design that Defendants reasonably should have adopted.

239.   There was a safer alternative design that would have prevented or significantly reduced the risk of injury. It was reasonable as well as economically and technologically feasible at the time the product left Defendants' control by the application of existing or reasonably achievable scientific knowledge.

240.   Defendants failed to comply with industry standards, including federal or state safety standards and regulations, and industry-wide customs, practices, and design standards. Defendants' noncompliance with such standards demonstrates the product design selected was unreasonable considering the feasible choices of

which Defendants knew and should have known. Despite any instances of compliance with such standards, Defendants' product still contained a design defect.

241.   The defective and unreasonably dangerous conditions discussed herein existed when the product left Defendants' control. They existed when Defendants sold the product. They existed when the Decedent received it.

242.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

243.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### (STRICT PRODUCT LIABILITY - FAILURE TO WARN)

244.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

245.   Defendants' product was defective due to inadequate post-marketing warnings and instructions, and/or inadequate testing and studies, and/or inadequate reporting regarding the results. Defendants' product was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injury from their product, they failed to provide adequate warnings to the medical community and patients, and continued to promote the product as safe and effective.   Even if the product was not defectively designed, it failed to contain adequate warnings or instructions. The dangers at issue were of the kind that required warnings and instructions.

246.   In part, Defendants failed to provide adequate warnings regarding the existence of additional acetate in their product that the body could convert to bicarbonate, which could cause metabolic alkalosis, a condition associated with a higher risk of cardiac injury and death. Defendants failed to provide adequate instructions for health care providers to be aware of these risks, alter prescription practices, adjust the dialysis machines, and take other steps before, during, and after the dialysis treatment process to avoid these dangers. Any information Defendants provided about these risks was inadequate in content, presentation, and delivery. They were ineffective for those who would be foreseeably affected by the product. Defendants' product was capable of being made safe for its intended and ordinary use.

247.   The Decedent and his healthcare providers were unaware of the dangers and proper instructions. Neither Decedent nor his providers understood and appreciated the risks associated with the product or its proper usage. The dangers described herein were not known, obvious, or apparent. They did not result from any unforeseeable and unanticipated use. Defendants' conduct and internal memoranda support these allegations.

248.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

249.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**(FRAUDULENT MISREPRESENTATION)**

250.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

251.   The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiffs, Decedent, Decedent's healthcare providers, the FDA, and/or the public in general, that said products, NaturaLyte and/or GranuFlo, had been tested and were found to be safe and/or effective for use as acid concentrates during hemodialysis.

252.   The representations made by Defendants were, in fact, false.

253.   When said representations were made by Defendants, they knew those representations to be false and they willfully, wantonly and recklessly disregarded whether the representations were true.

254.   These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, Decedent, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense and/or purchase said products, NaturaLyte and/or GranuFlo, for use as a means of treating kidney disease during hemodialysis, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Decedent.

255.   At the time the aforesaid representations were made by Defendants and, at the time Decedent was administered and/or receivedNaturaLyte and/or GranuFlo, Plaintiffs, Decedent, Decedent's treating physicians and/or healthcare

providers were unaware of the falsity of said representations and reasonably believed them to be true.

256.   In reliance upon said representations, Plaintiffs, Decedent, Decedent's treating physicians and/or healthcare providers, were induced to and did use NaturaLyte and/or GranuFlo, thereby causing the Decedent to sustain severe and permanent personal injuries, and/or be at an increased risk of sustaining severe and permanent personal injuries.

257.   Defendants knew and were aware or should have been aware that NaturaLyte and/or GranuFlo had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings.

258.   Defendants knew or should have known that NaturaLyte and/or GranuFlohad a potential to, could, and would cause severe and grievous injury to the users of said product and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

259.   Defendants brought NaturaLyte and/or GranuFlo to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs and the Decedent.

260.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

261.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (FRAUDULENT CONCEALMENT)

262.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

263.   At all times during the course of dealing between Defendants and Plaintiffs, Decedent, Decedent's healthcare providers, and/or the FDA, Defendants misrepresented the safety of NaturaLyte and/or GranuFlo for their intended use.

264.   At all times during the course of dealing between Defendants and Plaintiffs, Decedent, Decedent's healthcare providers, and/or the FDA, Defendants misrepresented the serious and grave health risks that could occur by virtue of exposure to NaturaLyte and/or GranuFlo including, but not limited to, death, cardiopulmonary arrest, hypokalemia, hypoxemia, hypercapnia, cardiac arrhythmias, coma, stroke and/or hypotension.

265. Defendants knew or were reckless in not knowing that its representations were false.

266. In representations to Plaintiffs, Decedent, and/or Decedent's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

a.   That NaturaLyte and/or GranuFlo were not as safe as other acid concentrates;

b.   That the risks of adverse events with NaturaLyte and/or GranuFlo were higher than those with other acid concentrates;

c.   That the risks of adverse events with NaturaLyte and/or GranuFlo were not adequately tested and/or known by Defendants;

d.   That Defendants were aware of dangers in NaturaLyte and/or GranuFlo;

e.   That the administration of NaturaLyte and/or GranuFlo to dialysis patients resulted in higher than normal post-dialysis bicarbonate levels;

f.   That the administration of NaturaLyte and/or GranuFlo to dialysis patients resulted in an increase in metabolic alkalosis;

g.   That physicians and/or healthcare facilities administering NaturaLyte and/or GranuFlo to dialysis patients should monitor more frequently the dialysis patient's pre and post-dialysis bicarbonate levels;

h.   That the administration of NaturaLyte and/or GranuFlo to dialysis patients resulted in dangerous side effects, including but not limited to death, cardiopulmonary arrest, electrolyte imbalances, hypokalemia, hypoxemia, hypercapnia, cardiac arrhythmias, coma, stroke and hypotension;

i.   That NaturaLyte and/or GranuFlo were defective, and that they caused dangerous side effects, including, but not limited to, death, cardiopulmonary arrest, electrolyte imbalances, hypokalemia, hypoxemia, hypercapnia, cardiac arrhythmias, coma, and hypotension, in a much more and significant rate than other acid concentrates;

j.   That patients needed to be monitored more regularly than normal while using NaturaLyte and/or GranuFlo;

k.   That NaturaLyte and/or GranuFlo were manufactured, marketed, produced and distributed negligently, defectively and/or improperly;

l.   That NaturaLyte and/or GranuFlo were designed negligently, defectively and/or improperly.

267.   Defendants were under a duty to disclose to Plaintiffs, Decedent, Decedent's treating physicians, hospitals, healthcare providers, and/or the FDA the defective nature of NaturaLyte and/or GranuFlo, including but not limited to, the serious and grave health risks associated with NaturaLyte and/or GranuFlo including but not limited to death, cardiopulmonary arrest, electrolyte imbalances, hypokalemia, hypoxemia, hypercapnia, cardiac arrhythmias, coma, stroke and hypotension.

268.   Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used NaturaLyte and/or GranuFlo, including Decedent, in particular.

COMPLAINT
61

269.   Defendants' concealment and omissions of material facts concerning, *inter alia,* the safety of NaturaLyte and/or GranuFlo was made purposefully, intentionally, willfully, wantonly, and/or recklessly, to mislead Plaintiffs, Decedent, Decedent's physicians, hospitals and healthcare providers into reliance and continued use of NaturaLyte and/or GranuFlo, and actions thereon, and to cause them to purchase, prescribe, and/or dispense NaturaLyte and/or GranuFlo and/or otherwise use the products.

270.   Defendants knew that Plaintiffs, Decedent, Decedent's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding NaturaLyte and/or GranuFlo, as set forth herein.

271.   Plaintiffs, Decedent, Decedent's doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

272.   Plaintiffs, Decedent, Decedent's doctors, healthcare providers, and/or hospitals reasonably relied on Defendants' representations that their NaturaLyte and/or GranuFlo were safe for their intended use.

273.   Had the severe health risks associated with Defendants' NaturaLyte and/or GranuFlo been properly and/or adequately disclosed, Plaintiffs, Decedent,

Decedent's treating physicians, healthcare providers, and/or healthcare facilities would not have purchased and/or usedNaturaLyte and/or GranuFlo.

274.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

275.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATION)

276.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

277.   Defendants had a duty to represent to the medical and healthcare community, and to Plaintiffs, Decedent, the FDA and the public in general that said products, NaturaLyte and/or GranuFlo, had been tested and found to be safe and effective for their intended use.

278.   The representations made by Defendants were, in fact, false.

279.   Defendants failed to exercise ordinary care in the representation of NaturaLyte and/or GranuFlo, while involved in their manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in that Defendants negligently misrepresentedNaturaLyte and/or GranuFlo's high risk of unreasonable, dangerous side effects.

280.   Defendants breached their duty in representingNaturaLyte and/or GranuFlo's serious side effects to the medical and healthcare community, to the Plaintiffs, Decedent, the FDA and the public in general.

281.   Defendants knew and/or were aware or should have known that NaturaLyte and/or GranuFlohad been insufficiently tested, and/or had not been tested, that they lacked adequate and/or accurate warnings, and/or that they created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks of severe and grave health consequences.

282.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

283.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

284.   WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### (FRAUD)

285.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

286.   Defendants conducted research and/or had a duty to conduct research using NaturaLyte and/or GranuFlo.

287.   As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including, but not limited to, assuring the public, Plaintiffs, Decedent, Decedent's doctors, hospitals, healthcare professionals, and/or the FDA that NaturaLyte and/or GranuFlo were safe and effective for their intended use as acid concentrates.

288.   As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including Plaintiffs, the Decedent, and Decedent's healthcare providers.

289.   Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public, Plaintiffs, Decedent, Decedent's respective healthcare providers and/or the FDA.

290.   The information distributed to the public, the FDA, Plaintiffs, and Decedent by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, internet advertisements and/or all other commercial media contained material representations of fact and/or omissions.

291.   The information distributed to the public, the FDA, Plaintiffs, and Decedent by Defendants intentionally included representations that Defendants' acid concentrates NaturaLyte and/or GranuFlo were safe and effective for their intended use as acid concentrates.

292.   The information distributed to the public, the FDA, Plaintiffs, and Decedent by Defendants intentionally included representations that Defendants' acid concentrates NaturaLyte and/or GranuFlo carried the same risks, hazards, and/or dangers as other acid concentrates on the market.

293.   The information distributed to the public, the FDA, Plaintiffs, and Decedent by Defendants intentionally included representations that Defendants' acid concentrates NaturaLyte and/or GranuFlo were more effective for the treatment of kidney disease during hemodialysis, thereby encouraging the use of

NaturaLyte and/or GranuFloin circumstances other than those in which the drug has been approved, over-promises the benefits and minimizes the risk associated with NaturaLyte and/or GranuFlo.

294.   The information distributed to the public, the FDA, Plaintiffs, and Decedent by Defendants intentionally included false representations that exposure to NaturaLyte and/or GranuFlo was not injurious to the health and/or safety of its intended users.

295.   The information distributed to the public, the FDA, Plaintiffs, and Decedent by Defendants intentionally included false representations that exposure to NaturaLyte and/or GranuFlo was as potentially injurious to the health and/or safety of its intended users as other acid concentrates.

296.   These representations were all false and misleading.

297.   Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that NaturaLyte and/or GranuFlo were not safe as a means of an acid concentrate and/or were not as safe as other means of acid concentrates.

298.   Defendants intentionally made material representations to the FDA and the public, including the medical profession, Plaintiffs, Decedent, and/or Decedent's healthcare providers, regarding the safety of NaturaLyte and/or

GranuFlo, specifically but not limited to exposure to NaturaLyte and/or GranuFlo not having dangerous and serious health and/or safety concerns.

299.  Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, Plaintiffs, Decedent, and/or Decedent's healthcare providers, regarding the safety of NaturaLyte and/or GranuFlo, specifically but not limited to NaturaLyte and/or GranuFlo being as safe a means of acid concentrate as other acid concentrates on the market.

300.  That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, Plaintiffs, Decedent and/or the Decedent's healthcare providers, to gain the confidence of the public, healthcare professionals, the FDA, Plaintiffs, and Decedent to falsely ensure the quality and fitness for use of NaturaLyte and/or GranuFlo and to induce the public, and/or Plaintiffs and Decedent to purchase, request, dispense, prescribe, recommend, and/or continue to use NaturaLyte and/or GranuFlo.

301. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, Plaintiffs, and Decedent that NaturaLyte and/or GranuFlo were fit and safe for use as acid concentrates and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other acid concentrates on the market.

302.   Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, Plaintiffs, Decedent and/or Decedent's healthcare providers that exposure to NaturaLyte and/or GranuFlodid not present serious health and/or safety risks.

303.   Defendants made claims and representations in their documents submitted to the FDA, to the public, to healthcare professionals, Plaintiffs, Decedent, and/or Decedent's healthcare providers that exposure to NaturaLyte and/or GranuFlodid not present health and/or safety risks greater than other acid concentrates on the market.

304.   These representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

305.   These representations and others made by Defendants were made with the intention of deceiving and defrauding Plaintiffs, Decedent, Decedent's healthcare providers and/or the FDA, and were made in order to induce Plaintiffs, Decedent, and/or Decedent's respective healthcare professionals to rely upon misrepresentations and caused Plaintiffs, Decedent and/or Decedent's healthcare providers to purchase, use, rely on, request, dispense, recommend, and/or prescribeNaturaLyte and/or GranuFlo.

306. Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of exposure to NaturaLyte and/or GranuFlo to the public at large, Plaintiffs, Decedent, and/or Decedent's healthcare providers in particular, for the purpose of influencing the marketing of products known to be dangerous and defective and/or not as safe as other alternatives, including other acid concentrates.

307. Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of exposure to NaturaLyte and/or GranuFloby concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of NaturaLyte and/or GranuFlo.

308. Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling Plaintiffs, Decedent, Decedent's healthcare providers and/or Decedent's healthcare professionals into a sense of security so that Plaintiffs, Decedent and/or Decedent's healthcare providers would rely on the representations and purchase, use and rely on NaturaLyte and/or GranuFloand/or that their respective healthcare providers would dispense, prescribe, and/or recommend the same.

309.   Defendants, through their public relations efforts, which included, but were not limited to, the public statements and press releases, knew or should have known that the public, including Plaintiffs, Decedent, and Decedent's healthcare providers would rely upon the information being disseminated.

310.   Defendants utilized direct to consumer adverting to market, promote, and/or advertiseNaturaLyte and/or GranuFlo.

311.   Plaintiffs, Decedent, and/or Decedent's healthcare providers did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of acid concentrates and were thereby induced to purchase, use and rely on Defendants' acid concentratesNaturaLyte and/or GranuFlo.

312.   At the time the representations were made, Plaintiffs, Decedent, and/or Decedent's respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of exposure toNaturaLyte and/or GranuFlo.

313.   The Plaintiffs, Decedent, and/or Decedent's healthcare providers did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiffs, Decedent and/or Decedent's healthcare providers with reasonable diligence have discovered the true facts.

314.   Had Plaintiffs, Decedent, and/or Decedent's healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of NaturaLyte and/or GranuFlo, Plaintiffs, Decedent and/or Decedent's healthcare providers would not have purchased, used and/or relied on Defendants' acid concentratesNaturaLyte and/or GranuFlo.

315.   The Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiffs, Decedent and/or Decedent's healthcare providers.

316.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

317.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

# EIGHTH CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY)

318.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

319.   Defendants expressly warranted that NaturaLyte and/or GranuFlo were safe and well accepted by users.

320.   The acid concentrates NaturaLyte and/or GranuFlo do not conform to these express representations because NaturaLyte and/or GranuFlo are not safe and have numerous serious side effects, many of which were not accurately warned about by Defendants.  Asa direct and proximate result of the breach of said warranties, Plaintiffs and Decedent suffered and/or will continue to suffer severe and permanent personal injuries, harm and economicloss.

321.  Plaintiffs,  Decedent,  Decedent's  healthcare  providers  and/or healthcare facilities did rely on the express warranties of Defendants herein.

322.   Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of NaturaLyte and/or GranuFloas acid concentrates during hemodialysis and in recommending, prescribing, and/or dispensing NaturaLyte and/or GranuFlo to persons who were undergoing hemodialysis.

323.   Defendants herein breached the aforesaid express warranties, as their products NaturaLyte and/or GranuFlo were defective and did not contain adequate warnings.

324.   Defendants expressly represented to Plaintiffs, Decedent, Decedent's healthcare providers, and/or the FDA that NaturaLyte and/or GranuFlo were safe and fit for use for the purposes intended, that they were of merchantable quality, that they did not produce any dangerous side effects in excess of those risks associated with other acid concentrates, that the side effects they did produce were accurately reflected in the warnings and that they were adequately tested and fit for their intended use.

325.   Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that NaturaLyte and/or GranuFlo were not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

326.   As a result of the foregoing acts and omissions, Plaintiffs and Decedent suffered the injuries and damages alleged herein.

327.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

328.   Fresenius' conduct as alleged herein demonstrates that Fresenius acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## NINTH CAUSE OF ACTION
### (BREACH OF IMPLIED WARRANTIES)

329.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

330. At all times herein mentioned, Defendants manufactured, compounded,  portrayed, distributed, recommended, merchandised, advertised, promoted and sold NaturaLyte and/or GranuFlo for use as acid concentrates.

331.   At the time Defendants marketed, sold, and distributed NaturaLyte and/or GranuFlo for use by Decedent, Defendants knew of the use for which NaturaLyte and/or GranuFlo were intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

332. Defendants impliedly represented and warranted to the users of, including Decedent, Decedent's physicians and healthcare providers, and/or the

COMPLAINT
75

FDA that NaturaLyte and/or GranuFlo were safe and of merchantable quality and fit for the ordinary purpose for which said products were to be used.

333.   That said representations and warranties aforementioned were false, misleading, and inaccurate in that NaturaLyte and/or GranuFlo were unsafe, unreasonably dangerous, improper, not of merchantable quality and defective.

334.   Plaintiffs, Decedent, Decedent's healthcare providers, healthcare facilities and/or members of the medical community did rely on said implied warranties of merchantability and of fitness for a particular use and purpose.

335.   Plaintiffs, Decedent, Decedent's healthcare providers, healthcare facilities and/or members of the medical community reasonably relied upon the skill and judgment of Defendants as to whether NaturaLyte and/or GranuFlo were of merchantable quality and/or safe and fit for their intended use.

336.   The acid concentrate NaturaLyte and/or GranuFlo were placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition and the products and accompanying materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

337.   Defendants herein breached the aforesaid implied warranties, as their products NaturaLyte and/or GranuFlo were not fit for their intended purposes and uses.

COMPLAINT

338.   As a direct and proximate result of Defendants' conduct and omissionsdescribed herein, Plaintiffs and Plaintiffs' Decedent sustained the injuries and damages alleged herein.

339.   Defendants'conduct as alleged herein demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## TENTH, ELEVENTH AND TWELFTH CAUSES OF ACTION
### (LOSS OF CONSORTIUM, SURVIVAL ACTION AND WRONGFUL DEATH)

340.   Plaintiffs incorporate every paragraph of this Complaint as if set forth herein.

341.   As a result of the acts and/or omissions of Defendants as set forth herein, Plaintiffs' Decedent suffered severe personal loss and suffering before he died, and his next of kin have also suffered the loss of services, loss of financial support, loss of society including care, assistance, and mental anguish, loss of consortium, as well as funeral and burial expenses, entitling them to compensatory and punitive damages and attorney's fees.

1
2

## THIRTEENTH CAUSE OF ACTION
### (PUNITIVE DAMAGES)

3     342.   Plaintiffs incorporate every paragraph of this Complaint as if set forth

4     herein.

5     343.   The willful, wanton, reckless and gross misconduct of Defendants,

6

7     and each of them, under the circumstances here, were likely to, and did in fact

8     cause grave and serious harm, to wit, the death of Plaintiffs' Decedent.

9     344.  Defendants'   conduct   was   committed   with   knowing,   conscious,

10

11    wanton, willful and deliberate disregard for the value of human life and the rights

12    and safety to patients/consumers, including Plaintiffs' Decedent, thereby entitling

13
14    Plaintiffs to punitive and exemplary damages so as to punish Defendants and deter

15    them from similar conduct in the future.

16    ## PRAYER FOR RELIEF

17
18          Plaintiffs pray for judgment against Defendants as follows:

19    a.  Awarding  compensatory  damages  to  Plaintiffs  for  all  of  Plaintiffs'  and
          Decedent's injuries in an amount to be determined at trial;
20

21    b.  Awarding punitive damages to Plaintiffs;

22    c.  Awarding pre- and post-judgment interest to Plaintiffs;

23
24    d.  Awarding the costs and expenses of this litigation to Plaintiffs;

25    e.  Awarding  reasonable  attorneys'  fees  and  costs  to  Plaintiffs  to  the  extent
          provided by law; and
26

27

28

1     f.   Awarding such other and further relief as the Court deems necessary, just,
2        and proper.

3                        **<u>JURY TRIAL</u>**

4        Plaintiffs demand a trial by jury for all issues so triable.

5

6 Dated: _____

7

8                              **SUOJANEN LAW OFFICE**

9                              By:_____/S/_____

10                              Wayne William Suojanen (193627)

11                              billsuojanen@gmail.com

                              **SUOJANEN LAW OFFICE**

12                              26895 Aliso Creek Road

13                              Suite B440

                              Aliso Viejo, California 92656

14                              Telephone: 949-305-1498

15                              *(Counsel for Plaintiffs)*

16                              **ZOLL, KRANZ & BORGESS, LLC**

17

18                              By:_____

19                              Pamela Borgess (0072789)

                              pamela@toledolaw.com

20                              **ZOLL, KRANZ & BORGESS, LLC**

21                              6620 West Central Avenue, Suite 100

                              Toledo, Ohio 43617

22                              Telephone:  (419)841-9623

23                              Facsimile:  (419)841-9719

                              *(Co-Counsel for Plaintiffs- Subject To*

24                              *Pro HacVice Admission)*

25

26

27                           COMPLAINT

28                             79

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Jesus Bernal and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

## EDCV13- 401 JGB (OPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | | |
|---|---|---|
| CAROLINA DEFACIO, MARTIN FACIO, NORMA SHECKGOST, CAROLINA RIVERA, SYLVIA FACIO, and VERONICA STOCKER Individually and as the Heirs of JESSE FACIO, Deceased, | ) ) ) ) ) ) | |
| *Plaintiff(s)* | ) | |
| v. | ) ) | Civil Action No. |
| FRESENIUS MEDICAL CARE HOLDING, INC.; FRESENIUS MEDICAL CARE HOLDING INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA; FRESENIUS USA, INC.; FRESENIUS USA | ) ) ) ) ) | **EDCV13 - 00401 JGB (OPx)** |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

**DENISE VO**

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

1225

## SUMMONS (cont'd)

MANUFACTURING, INC.; FRESENIUS USA MARKETING, INC.;
FRESENIUS USA SALES, INC.; FRESENIUS MEDICAL CARE AG & CO.
KGAA; FRESENIUS MEDICAL CARE MANAGEMENT, AG; FRESENIUS SE
& CO. KGAA; and FRESENIUS MANAGEMENT, AG.,

Defendants.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Carolina Defacio, Martin Facio, Norma Sheckgost, Carolina Rivera, Sylvia Facio, and Veronica Stocker Individually and as the Heirs of Jesse Facio, Deceased.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Fresenius Medical Care Holding, Inc.; Fresenius Medical Care Holding, Inc. d/b/a Fresenius Medical Care North America; Fresenius USA, Inc.; Fresenius USA Manufacturing, Inc.; Fresenius USA Marketing, Inc.; Fresenius USA Sales, Inc.; Fresenius Medical Care AG & Co. KGAA; Fresenius Medical Care Management, AG; ⊞

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
SUOJANEN LAW OFFICE, 26895 Aliso Creek Rd, Ste B440, Aliso Viejo, CA 92656 (949-305-1498); ZOLL, KRANZ & BORGESS, LLC, 6620 W. Central Ave., Toledo, OH 43617 (419)841-9623 (subject to pro hac vice admission)

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No      ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sec. 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY:   Case Number: **EDCV13 - 00401 JGB (OPx)**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Middlesex County, Massachusetts<br>Germany |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: _____

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

**Key to Statistical codes relating to Social Security Cases:**

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |